**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| JOHN DOE, <br><br>                Plaintiff, <br> v. <br><br> X CORP. et al., <br><br>                Defendants. | **Case No. 4:25-cv-001282-P** <br><br> Judge: Honorable Mark T. Pittman |

**DEFENDANTS' BRIEF IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................1

FACTUAL ALLEGATIONS ......................................................................................................2

ARGUMENT...............................................................................................................................3

I.      PLAINTIFF'S COMMERCIAL PORNOGRAPHIC CONTENT IS NOT PROTECTED BY THE NON-CONSENSUAL INTIMATE IMAGES STATUTE ..........3

II.     SECTION 230 BARS PLAINTIFF'S CLAIMS..............................................................8

        A.      The Intellectual Property Exception Is Inapplicable..................................................8

        B.      Neither X Nor xAI Are "Information Content Providers" With Respect To Plaintiff's Claims .........................................................................................................9

III.    PLAINTIFF HAS NOT ALLEGED THAT XAI DISCLOSED HIS COMMERCIAL PORNOGRAPHIC CONTENT............................................................12

IV.    GRANTING LEAVE TO AMEND WOULD BE FUTILE.............................................12

CONCLUSION..........................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................3

*Boeta v. FAA*,
  831 F.3d 636 (5th Cir. 2016) ...................................................................................4

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ..........................................................................10, 11

*Corley v. United States*,
  556 U.S. 303 (2009)..................................................................................................7

*Doe v. Bates*,
  2006 WL 3813758 (E.D. Tex. Dec. 27, 2006)....................................................10, 11

*Doe v. Crawford*,
  702 F. Supp. 3d 509 (S.D. Miss. 2023)....................................................................9

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ...................................................................................8

*Doe v. Stevenson*,
  2025 WL 1165660 (N.D. Ill. Apr. 3, 2025) ..............................................................9

*In re Durand-Day*,
  134 F.4th 846 (5th Cir. 2025) ..................................................................................5

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
  946 F.3d 1040 (9th Cir. 2019) ..............................................................................8, 9

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) (en banc) ............................................................10, 11

*Fed. Agency of News LLC v. Facebook, Inc.*,
  432 F. Supp. 3d 1107 (N.D. Cal. 2020) .................................................................11

*Feliciano v. Dep't of Transp.*,
  605 U.S. 38 (2025)....................................................................................................6

*FTC v. Accusearch Inc.*,
  570 F.3d 1187 (10th Cir. 2009) .................................................................................10, 12

*FTC v. LeadClick Media, LLC*,
  838 F.3d 158 (2d Cir. 2016)...............................................................................................10

*Google, Inc. v. Hood*,
  822 F.3d 212 (5th Cir. 2016) ...............................................................................................8

*Hutcheson v. Dallas Cnty., Tex.*,
  994 F.3d 477 (5th Cir. 2021) .............................................................................................13

*Jam v. Int'l Fin. Corp.*,
  586 U.S. 199 (2019)..............................................................................................................6

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) ...........................................................................................10

*La'Tiejira v. Facebook, Inc.*,
  272 F. Supp. 3d 981 (S.D. Tex. 2017) ...............................................................................11

*Martinez v. Nueces County*,
  71 F.4th 385 (5th Cir. 2023) ..............................................................................................12

*Pulsifer v. United States*,
  601 U.S. 124 (2024)..............................................................................................................5

*United States v. Lauderdale County*,
  914 F.3d 960 (5th Cir. 2019) ...............................................................................................6

*United States v. Phea*,
  755 F.3d 255 (5th Cir. 2014) ...............................................................................................4

*Wells v. YouTube, LLC*,
  2021 WL 2652966 (N.D. Tex. May 17, 2021), *report and recommendation
  adopted*, 2021 WL 2652514 (N.D. Tex. June 28, 2021) .......................................................10

## <u>Statutes</u>

15 U.S.C. § 6851.................................................................................................................1, 5, 6

15 U.S.C. § 6851(a)(1)............................................................................................................4, 5

15 U.S.C. § 6851(a)(4)..............................................................................................................12

15 U.S.C. § 6851(a)(5)(B) ......................................................................................................5, 7

15 U.S.C. § 6851(b)(1)(A)........................................................................................................12

15 U.S.C. § 6851(b)(3)(A)(i) ............................................................................................3

15 U.S.C. § 6851(b)(3)(A)(ii) ...........................................................................................3

15 U.S.C. § 6851(b)(4)(A) ..................................................................................... *passim*

18 U.S.C. § 2257 .......................................................................................................4, 5, 6

18 U.S.C. § 2257(a) ..........................................................................................................4

18 U.S.C. § 2257(h)(2) ..................................................................................................5, 6

47 U.S.C. § 230 .................................................................................................... *passim*

47 U.S.C. § 230(c)(1) ........................................................................................................8

47 U.S.C. § 230(e)(2) ........................................................................................................8

47 U.S.C. § 230(f)(3) .........................................................................................................9

## Other Authorities

Fed. R. Civ. Proc. 12(b)(6) ...............................................................................................3

**INTRODUCTION**

This lawsuit tries to turn the non-consensual intimate images statute, 15 U.S.C. § 6851 (the "NCII Statute"), into something it is not:  a sweeping new series of special intellectual property protections for commercial pornography.  Plaintiff John Doe—a professional adult-content performer—concedes he willingly created material for OnlyFans and pornography studios.  He now attempts to rebrand that consensually produced, for-profit content as "nonconsensual" simply because third parties reposted it outside his preferred distribution channels.  The NCII Statute was enacted to protect victims of "revenge porn"—not to give pornographers a federal cause of action whenever licensing terms are allegedly violated.

The complaint fails as a matter of law.  By its terms, the NCII Statute excludes "commercial pornographic content" unless it was "produced by force, fraud, misrepresentation, or coercion of the depicted individual."   15 U.S.C. § 6851(b)(4)(A).  Plaintiff admits the content at issue is commercial pornography, yet he does not allege that he was forced, tricked, or coerced into making it, so it falls outside the NCII Statute's protections.  Plaintiff's suggestion that a third party later misrepresented compliance with OnlyFans's terms of service does not convert consensual production into coercion or fraud.  "Produced" means created—filmed or photographed—not copied after the fact.

Even if the statute could be stretched that far, Plaintiff's claims are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230.  Plaintiff seeks to hold X liable for material posted by third parties, which is precisely what Section 230 forecloses.  And the narrow intellectual property carve-out does not apply because the NCII Statute is not an intellectual property law:  it grants no exclusive rights and provides no infringement remedies.

The claims against xAI falter for the further reason that Plaintiff does not allege xAI "disclosed" any content at all.  Plaintiff speculates only that Grok (xAI's AI model) was trained on material from X, but he does not plead that xAI ever transferred or published his images to anyone.  That omission is dispositive.

Because Plaintiff's claims are foreclosed by the NCII Statute's plain text and barred by

1

Section 230, and he has already amended his complaint twice, further amendment would be futile. The Court should dismiss the complaint with prejudice.

## FACTUAL ALLEGATIONS

The following facts are alleged in Plaintiff's second amended complaint (ECF No. 74, "SAC"). Defendants accept Plaintiff's well-pleaded factual allegations as true solely for purposes of this motion.

Plaintiff alleges he is a content creator on OnlyFans. SAC ¶¶ 4, 32-36. He further admits that content he created for his OnlyFans account constitutes "intimate visual depictions," "sexually explicit conduct," and/or "commercial pornographic content," as defined by the NCII Statute. SAC ¶ 39.

Plaintiff alleges that a third party copied content depicting him from his OnlyFans account without his consent and in violation of OnlyFans's terms of service. SAC ¶¶ 44-48. Plaintiff contends that the person who copied the images off his OnlyFans account "misrepresented [his or her] willingness to comply with the acceptable use policy and terms of service" and thus "fraudulently gained access to [his] intimate visual depictions." *Id.*

Plaintiff also alleges that he stars in "studio pornography"—commercial pornography produced by studios, including Falcon Studios, SayUncle, Pride Studios, and ASG Max. SAC ¶ 49. According to Plaintiff, images of him were also copied "from studios' websites" in violation of the studios' terms of service. SAC ¶¶ 52-53.

As alleged, the images were "ultimately posted to Twitter, and subsequently X, and then disclosed, as defined by the NCII Statute, by X to its users." SAC ¶ 55. According to Plaintiff, he "did not consent to the disclosure of his NCII by X." SAC ¶ 58. And "Twitter, and subsequently X, did not obtain [his] consent to disclose his intimate images on its platform." SAC ¶ 59. Plaintiff further alleges that he "has reported NCII to X" and that "X knew that … Doe did not consent to disclosure of his intimate images on X." SAC ¶¶ 60-61.

As to xAI, Plaintiff alleges its artificial intelligence model was trained by "feeding it data and content," such that it "requires data sources." SAC ¶ 81. Plaintiff further alleges that "xAI

was trained on the content of X," and from there, he speculates that "X disclosed … nonconsensual intimate images, including [his], to xAI." SAC ¶¶ 82, 85; *see also* SAC ¶ 113. And Plaintiff alleges he "did not consent to the disclosure of his NCII to xAI by X." SAC ¶ 87.[1]

Plaintiff brings claims on his own behalf and also seeks to represent a class. SAC ¶ 118. Plaintiff asserts two claims for relief: a claim for violation of the NCII Statute by X (SAC ¶¶ 129-35) (Count I), and a claim for violation of the NCII Statute by xAI (SAC ¶¶ 136-42) (Count II). In connection with both claims, Plaintiff seeks: actual and statutory damages under 15 U.S.C. § 6851(b)(3)(A)(i) (authorizing "actual damages sustained by the individual or liquidated damages in the amount of $150,000"); an injunction under 15 U.S.C. § 6851(b)(3)(A)(ii); and an award of attorneys' fees and costs under 15 U.S.C. § 6851(b)(3)(A)(i). Plaintiff purports to cabin his claims to "October 1, 2022 to November 14, 2024." SAC ¶ 118.

## ARGUMENT

This Court must dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When stripped of "conclusory statement[s]," the complaint must do more than "create[] a suspicion of a legally cognizable right of action"; it must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 561 (2007) (cleaned up).

## I. PLAINTIFF'S COMMERCIAL PORNOGRAPHIC CONTENT IS NOT PROTECTED BY THE NON-CONSENSUAL INTIMATE IMAGES STATUTE

The NCII Statute expressly excludes "commercial pornographic content": "An identifiable individual may not bring an action for relief under this section relating to … an intimate image that is commercial pornographic content, unless that content was produced by force, fraud, misrepresentation, or coercion of the depicted individual." 15 U.S.C. § 6851(b)(4)(A).

---

[1] Although Plaintiff alleges that xAI creates "deep fakes"—"a highly realistic but fabricated or manipulated image or video created using artificial intelligence (AI)" (SAC ¶ 114)—he does not allege that he was depicted in any such content.

3

Here, Plaintiff expressly alleges that the content at issue—pornography for his OnlyFans account and commercial-pornography websites—is "commercial pornographic content."  SAC ¶¶ 39, 49; *see also* ECF No. 70 at 7 (acknowledging that the "content at issue" is "commercial pornographic content").[2]  Thus, Plaintiff was required to allege facts showing that such content was "produced by force, fraud, misrepresentation, or coercion of the depicted individual."  15 U.S.C. § 6851(b)(4)(A).

Plaintiff has not alleged any facts showing that this exception applies.  Plaintiff does not allege that he was tricked, forced, or coerced into making ***any*** of the content at issue.  To the contrary, Plaintiff's allegations show that he was a willing participant when it came to creating content for OnlyFans and commercial pornography studios.  *See, e.g.*, SAC ¶¶ 39, 49.

Nevertheless, Plaintiff has alleged that the content that he willingly participated in creating was later copied "by virtue of misrepresentation or fraud."  SAC ¶ 46; *accord* ECF No. 70 at 9.  But such allegations do not relate to the "produc[tion]" of the content.  The term "produced," as a matter of plain meaning and statutory context, clearly refers to the creation—the filming or photographing—of the intimate image, not things that happen after the image is created.  *See* 15 U.S.C. § 6851(b)(4)(A); *Produce*, THE AMERICAN HERITAGE DICTIONARY (5th ed. 2012) ("To create by physical or mental effort."); *Boeta v. FAA*, 831 F.3d 636, 642-43 (5th Cir. 2016) (ordinary, non-technical terms in statutes should be interpreted in accordance with their plain

---

[2]  "Commercial pornographic content" is defined as "any material that is subject to the record keeping requirements under section 2257 of title 18."  15 U.S.C. § 6851(a)(1).  In turn, 18 U.S.C. § 2257(a) provides, "Whoever produces any … videotape, digital image, digitally- or computer-manipulated image of an actual human being, picture, or other matter which … (1) contains one or more visual depictions made after November 1, 1990 of actual sexually explicit conduct; and (2) is produced in whole or in part with materials which have been mailed or shipped in interstate or foreign commerce, or is shipped or transported or is intended for shipment or transportation in interstate or foreign commerce; shall create and maintain individually identifiable records pertaining to every performer portrayed in such a visual depiction."  The content depicting Plaintiff is subject to the reporting requirements under 18 U.S.C. § 2257 because the content is sexually explicit and was plainly intended to be distributed in interstate commerce through, for instance, OnlyFans and studio-pornography websites—all of which are publicly accessible.  *See* SAC ¶¶ 39, 49; *United States v. Phea*, 755 F.3d 255, 266 & n.32 (5th Cir. 2014) ("the Internet" is a "means or facilit[y] of interstate commerce").

4

meaning, which may be discerned through dictionaries).

This interpretation of the word "produced" is confirmed by another provision of the NCII Statute that refers to content "produced while the identifiable individual was in a public place." 15 U.S.C. § 6851(a)(5)(B).  That provision, like the "commercial pornographic content" exception, clearly refers to the filming or photographing of content—not, for example, a third party copying that content after it was filmed or photographed.  It would make no sense to ask, for example, whether the person depicted in the content was "in a public place" when a third party copied the content.  And "[w]ithin a statute, 'the same term usually has the same meaning.'"  *In re Durand-Day*, 134 F.4th 846, 852 (5th Cir. 2025) (quoting *Pulsifer v. United States*, 601 U.S. 124, 149 (2024)).

Contrary to this straightforward interpretation, Plaintiff wrongly asserts that "18 U.S.C. § 2257 is incorporated by reference into 15 U.S.C. § 6851." SAC at 8 n.6.  Plaintiff further asserts that "18 U.S.C. § 2257(h)(2) states: 'the term "produces" **(A)** means -- **(i)** actually filming, videotaping, photographing, creating a picture, digital image, or digitally- or computer-manipulated image of an actual human being; **(ii)** digitizing an image, of a visual depiction of sexually explicit conduct; or, assembling, manufacturing, publishing, **duplicating, reproducing**, or reissuing a book, magazine, periodical, **film, videotape, digital image, or picture**, or other matter intended for commercial distribution, that **contains a <u>visual depiction</u> of sexually explicit conduct**; or (iii) inserting on a computer site or service a digital image of, or otherwise managing the sexually explicit content, of a computer site or service that contains a visual depiction of, sexually explicit conduct.'" *Id.* (emphasis in original).

But Plaintiff's assertion that "18 U.S.C. § 2257 is incorporated by reference into 15 U.S.C. § 6851" is inaccurate and misleading.  Section 6851 does not incorporate 18 U.S.C. § 2257 *wholesale*.  Rather, 15 U.S.C. § 6851 incorporates a *single aspect* of 18 U.S.C. § 2257—its record-keeping requirement:  "The term 'commercial pornographic content' means material that is subject to the *record keeping requirements under section 2257 of Title 18*." 15 U.S.C. § 6851(a)(1) (emphasis added).  That is, courts must look to 18 U.S.C. § 2257 only to determine whether content

5

at issue is "commercial pornographic content"—Plaintiff does not dispute that his content falls within that definition. But nothing in 15 U.S.C. § 6851 suggests that courts should look to 18 U.S.C. § 2257 to determine whether "commercial pornographic content" was "produced by force, fraud, misrepresentation, or coercion of the depicted individual [Plaintiff]." 15 U.S.C. § 6851(b)(4)(A).

Nor does anything in 15 U.S.C. § 6851(b)(4)(A) suggests that the term "produced," as used in that provision, takes on the definition of "produces" in 18 U.S.C. § 2257(h)(2). If anything, the fact that Congress knew how to incorporate provisions of 18 U.S.C. § 2257 but did not incorporate the term "produces" indicates that the term "produced" in this context carries its ordinary meaning—not the special statutory meaning in 18 U.S.C. § 2257(h)(2). *See United States v. Lauderdale County*, 914 F.3d 960, 965 (5th Cir. 2019) (the fact that Congress, "when it so chooses, knows how to deviate from the ordinary usage" of a term indicates that courts should interpret term in accordance with its ordinary meaning where such deviation is absent). Indeed, absent evidence that Congress "define[d] a word or phrase in a specialized way or employ[ed] a term of art with long-encrusted connotations in a given field … those whose lives are governed by law are entitled to rely on its ordinary meaning, not left to speculate about hidden messages." *Feliciano v. Dep't of Transp.*, 605 U.S. 38, 45 (2025). That is the situation here.

Plaintiff also misplaces reliance on the "reference" canon. *See* ECF No. 70 at 5; ECF No. 19 at 6. That cannon applies "when a statute refers to a general subject, [so that] the statute adopts the law on that subject as it exists whenever a question under the statute arises." *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 209 (2019). Here, the issue is not whether the NCII Statute incorporates a "general subject" but that it incorporates a discrete provision of a specific statute—18 U.S.C. § 2257's recordkeeping requirement—into its definition of "commercial pornographic content." The NCII Statute does not, however, incorporate § 2257(h)(2)'s definition of "produces" into 15 U.S.C. § 6851(b)(4)(A)'s exemption for "commercial pornographic content produced by force, fraud, misrepresentation, or coercion of the depicted individual."

Indeed, accepting Plaintiff's "incorporation" argument would undermine the purpose of

the NCII Statute and its "commercial pornographic content" exclusion in 15 U.S.C. § 6851(b)(4)(A).  The purpose of the NCII Statute is to protect persons who have not consented to any public disclosure of their intimate images—not to allow pornographers like Plaintiff to seek damages and injunctive relief when their publicly available "commercial pornographic content" is shared more broadly than intended.  *See also id.* § 6851(a)(5)(B) (excluding intimate visual depictions "produced while the identifiable individual was in a public place" if the individual (1) "voluntarily display[ed] the content depicted" or (2) "consent[ed] to the sexual conduct").  And the evident purpose of the narrow exception for commercial pornographic content "***produced*** by force, fraud, misrepresentation, or coercion of the depicted individual" is that, in such circumstances, the individual never actually consented to creating the "commercial pornographic content" in the first place.  *Id.* § 6851(b)(4)(A) (emphasis added).

Moreover, Plaintiff's construction of the NCII Statute would nullify Congress's express carve-out for commercial pornography.  The statute excludes liability for the nonconsensual distribution of commercial pornographic content, yet Plaintiff contends that any unlicensed (*i.e.*, nonconsensual) dissemination of such content automatically falls within the statute's "fraud or misrepresentation" exception to that carve-out.  Under that reading, the commercial-pornography exclusion would never have operative effect: every covered distribution would be recast as "fraud," and the carve-out would apply in name only.  That interpretation cannot be reconciled with basic principles of statutory construction: "a statute should be construed so that effect is given to all its provisions, so that no party will be inoperative or superfluous." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up).

Here, Plaintiff concedes that he consensually and willingly is a creator and purveyor of "commercial pornographic content" (SAC ¶¶ 39, 49), taking him wholly outside the statute. Plaintiff's only complaint is that some of his content was allegedly displayed by a third party on X—in addition to the commercial-pornography distribution channels that he prefers.  *See, e.g.*, SAC ¶¶ 55-56.  Such a claim does not fall within the scope of the NCII Statute.

Because the content depicting Plaintiff is "commercial pornographic content," his claims

are exempted from the NCII Statute.  Any contrary result would contravene the express judgment Congress made in categorically denying these special statutory protections to consensually produced, for-profit "commercial pornographic content."

## II.    SECTION 230 BARS PLAINTIFF'S CLAIMS

Plaintiff's claims are also barred by Section 230.  Congress passed Section 230 to provide "broad immunity … to Web-based service providers for all claims stemming from their publication of information created by third parties."  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  The statute provides:  "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  "Courts have construed the immunity provisions in § 230 broadly in all cases arising from the publication of user-generated content."  *MySpace, Inc.*, 528 F.3d at 418.

### A.    The Intellectual Property Exception Is Inapplicable

Here, Plaintiff's claims clearly fall within the broad scope of Section 230.  His claims seek to hold X liable for content that third parties posted to X's platform based on a theory that X should have excluded such content.  *See, e.g.*, SAC ¶ 124 ("Plaintiff … [was a] depicted individual[] whose intimate visual depiction[] [was] disclosed … by Defendant X.").  And he seeks to hold xAI liable for "train[ing]" on this content.  *See* SAC ¶ 82.

Rather than challenge the requirements for Section 230 immunity, Plaintiff argues that his claims are subject to the intellectual property exception in Section 230, which provides:  "Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property."  47 U.S.C. § 230(e)(2). *See* ECF No. 70 at 10-17.  Plaintiff misplaces reliance on this exception.

The intellectual property exception is "construed narrowly to advance [Section 230's] express policy of providing broad immunity."  *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019); *see also Google, Inc. v. Hood*, 822 F.3d 212, 220-21 (5th Cir. 2016) (observing that the Fifth Circuit "and other circuits have consistently given a wide scope" to Section 230 immunity); *MySpace*, 528 F.3d at 418 (similar).  "The intellectual property exception is a limitation on immunity, and the CDA's stated congressional purpose counsels

against an expansive interpretation of the exception that would diminish the scope of immunity." *Enigma*, 946 F.3d at 1053. Thus, the exception "encompasses claims pertaining to an established intellectual property right under federal law, like those inherent in a patent, copyright, or trademark." *Id.* But the exception does not apply to claims "that do not ***directly involve*** intellectual property rights." *Id.* (emphasis added). For example, the exception does not cover "false advertising claims brought under the Lanham Act," even though "much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks." *Id.* (citation omitted).

By no means does the NCII Statute "directly involve" intellectual property rights. It creates no exclusive economic rights, grants no transferable interests, and provides no remedies for infringement. Rather, its intent is to "establish[] a federal civil cause of action for victims of revenge porn." *Doe v. Stevenson*, 2025 WL 1165660, at \*1 (N.D. Ill. Apr. 3, 2025); *see also Doe v. Crawford*, 702 F. Supp. 3d 509, 511 (S.D. Miss. 2023) (describing the NCII Statute as "the federal law prohibiting" revenge porn). The statute at issue is part of the Violence Against Women Reauthorization Act of 2022. *Stevenson*, 2025 WL 1165660, at \*1. Nothing in the statute suggests that it directly involves intellectual property rights. Indeed, it does not mention copyright, or trademark, or patent—the established intellectual property rights. *See Enigma*, 946 F.3d at 1053. Rather, the statute focuses on the nonconsensual display of intimate images, ***regardless*** of who holds intellectual property rights to those images. Accordingly, the "intellectual property" exception does not apply, and Section 230 therefore bars Plaintiff's claims.

### B. Neither X Nor xAI Are "Information Content Providers" With Respect To Plaintiff's Claims

There is no merit to Plaintiff's assertion that either X or xAI "is a content creator … responsible for the creation and development of unlawful content on its platform." ECF No. 19 at 11. An "information content provider" is "any person or entity that is responsible, in whole or in part, for the ***creation or development*** of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3) (emphasis added). A website that "creat[es]

or develop[s]" content "by making a material contribution to [its] creation or development" loses Section 230 immunity.  *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016).  A "material contribution" does not refer to "merely … augmenting the content generally, but to materially contributing to its alleged unlawfulness."  *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008) (en banc); *see also Wells v. YouTube, LLC*, 2021 WL 2652966, at *3 (N.D. Tex. May 17, 2021), *report and recommendation adopted*, 2021 WL 2652514 (N.D. Tex. June 28, 2021) ("[T]he provider of an interactive computer service is not responsible for information posted 'unless it assisted in the development of what made the content unlawful[.]'" (quoting *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016))); *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1201 (10th Cir. 2009) ("[T]o be 'responsible' for the development of offensive content, one must be more than a neutral conduit for that content.").  This test "draw[s] the line at the 'crucial distinction between, on the one hand, taking actions'" to display "actionable content and, on the other hand, responsibility for what makes the displayed content [itself] illegal or actionable."  *Kimzey*, 836 F.3d at 1269 n.4 (citation omitted).  That is, "the immunity analysis turns on who was responsible for the specific harmful material at issue, not on whether the service provider was responsible for the general features and mechanisms of the service." *Doe v. Bates*, 2006 WL 3813758, at *17 (E.D. Tex. Dec. 27, 2006).

A website does not create or develop content if it "does 'absolutely nothing to enhance the defamatory sting of the message' beyond the words offered by the [third-party] user." *Kimzey*, 836 F.3d at 1270 (citation omitted).  In contrast, if a website requires users to input unlawful content as a condition to use its services, the website is responsible, at least in part, for creating the content and loses its Section 230 immunity.  *Roommates*, 521 F.3d at 1169-70.  Only "[w]here it is very clear that the website directly participates in developing the alleged illegality [will] immunity … be lost." *Id.* at 1174-75.

Moreover, even if a website "could be considered an information content provider" as to some content, section 230 "still bar[s] [a plaintiff's] claims unless [the website] created or developed ***the particular [content] at issue***." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119,

1125 (9th Cir. 2003) (emphasis added); *accord Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1118 (N.D. Cal. 2020) (Section 230 barred plaintiff's claims because plaintiff merely alleged that Facebook "created other content," not the content at issue); *Bates*, 2006 WL 3813758, at \*17.

Here, there is no dispute that the content at issue was on X's platform only because third parties posted that content to the platform—neither X nor xAI authored the relevant posts.  *See, e.g.*, *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994 (S.D. Tex. 2017) (Facebook was not an "information content provider" because plaintiff "fail[ed] to allege a single fact suggesting that the Facebook Defendants authored the offending posts.").  Nor has Plaintiff alleged any facts showing that Defendants did anything to contribute to that which makes the "specific harmful material at issue," *Bates*, 2006 WL 3813758, at \*17—the allegedly infringing pornographic content—illegal.  The content depicting Plaintiff is not subject to the NCII Statute.  *See* Part I.  But even if it were, that content was unlawful when it was posted to X without Plaintiff's consent, and Plaintiff does not allege (nor could he) that X in any way acted to enhance its unlawfulness after the fact.

The fact that xAI allegedly received, reviewed, and trained its AI model on that content does not establish that xAI did anything to "materially contribut[e] to its alleged unlawfulness." *Roommates*, 521 F.3d at 1167-68.  Nor does Plaintiff allege any facts showing that xAI actually disclosed any of the content at issue to users (as discussed in more detail below). Likewise, Plaintiff's conclusory allegation that "xAI creates 'deep fakes'" (SAC ¶ 114) does not show that xAI "created or developed ***the particular [content] at issue***," *Carafano*, 339 F.3d at 1125. Indeed, Plaintiff does not even suggest, much less allege, that xAI created any deep fakes using content depicting Plaintiff.

For all these reasons, Plaintiff has failed to show that X or xAI "created or developed the particular [content] at issue." *Carafano*, 339 F.3d at 1125.  At most, Plaintiff alleges that the general features of Defendants' services permitted unlawful content to be propagated, not that Defendants themselves had anything to do with what made the content unlawful.  But the allegation

11

that a defendant acted as a "neutral conduit" for unlawful content cannot overcome Section 230 immunity. *Accusearch Inc.*, 570 F.3d at 1199.

## III.    PLAINTIFF HAS NOT ALLEGED THAT XAI DISCLOSED HIS COMMERCIAL PORNOGRAPHIC CONTENT

Plaintiff's claims as to xAI fail for the additional reason that Plaintiff has not alleged that xAI disclosed the commercial pornographic content at issue. The NCII Statute provides that, subject to certain exceptions, "an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief." 15 U.S.C. § 6851(b)(1)(A). "The term 'disclose' means to transfer, publish, distribute, or make accessible." *Id.* § 6851(a)(4).

Here, Plaintiff has not alleged that xAI "disclose[d]" any of the content at issue. Rather, Plaintiff takes issue with the fact X allegedly "disclosed [his] intimate images to xAI" (SAC ¶ 89), and then xAI's AI model allegedly "was trained on the content of X" (SAC ¶ 82), including the content at issue. *See* SAC ¶ 85 ("xAI continually trains on the content of X by continuously using X as its data source."). And Plaintiff does not allege that xAI actually disclosed the content at issue to any third party. For example, there are no allegations that a third party used xAI to search for images of Plaintiff and that xAI disclosed the content at issue. Nor are there any allegations that xAI created "deep fakes" using any content depicting Plaintiff. Accordingly, Plaintiff has failed to allege that xAI disclosed the content at issue, as required by the NCII Statute, and Plaintiff's claim as to xAI fails for this reason too.

## IV.    GRANTING LEAVE TO AMEND WOULD BE FUTILE

A complaint should be dismissed without leave to amend when any amendment would be futile. *See, e.g.*, *Martinez v. Nueces County*, 71 F.4th 385, 390-91 (5th Cir. 2023). That is the situation here. No matter the verbal gymnastics that Plaintiff may employ, the content at issue is

"commercial pornographic content" that is exempt from the NCII Statute on which Plaintiff relies. And Section 230 bars Plaintiff's attempt to hold Defendants responsible for content that third parties posted to X.  Moreover, Plaintiff had the opportunity to amend his complaint in response to Defendants' first motion to dismiss (*see* ECF Nos. 67, 71, 73, 74), yet his amendments did not cure any of the defects identified by Defendants.  Accordingly, dismissal without leave to amend is particularly appropriate.  *See, e.g.*, *Hutcheson v. Dallas Cnty., Tex.*, 994 F.3d 477, 484 (5th Cir. 2021) (dismissal without leave to amend appropriate when "[t]he district court already provided … an opportunity to amend … and the amended complaint is still deficient").

## CONCLUSION

The Court should dismiss Plaintiff's second amended complaint with prejudice.

Dated:  January 14, 2026

STONE HILTON PLLC

By:    */s/ Christopher D. Hilton*
      Judd E. Stone II
      Texas Bar No. 24076720
      Christopher D. Hilton
      Texas Bar No. 24087727
      600 Congress Ave., Suite 2350
      Austin, TX 78701
      Telephone: (737) 465-3897
      judd@stonehilton.com
      chris@stonehilton.com

      Noah Schottenstein
      Texas Bar No. 24100661
      301 Commerce St., Suite 2360
      Fort Worth, TX 76102
      Telephone: (737) 465-3897
      noah@stonehilton.com

## CERTIFICATE OF SERVICE

I certify that on January 14, 2026, the foregoing document was electronically filed with the CM/ECF system, thereby effectuating service on counsel for all parties.

*/s/ Christopher D. Hilton*
Christopher D. Hilton