IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOHN DOE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:25-CV-001282-O |
| § | |
| X CORP. et al, § | |
| § | |
| § | |
| Defendants. § | |

## ORDER

Congress passed and the President signed into law the Non-Consensual Intimate Image ("NCII") disclosure prohibition, colloquially known as the "revenge porn statute." It prohibits anyone from recklessly or knowingly disclosing another's "intimate visual depiction . . . without the consent of the individual" and imposes statutory damages of $150,000 for violations. 15 U.S.C. § 6851(b)(1)(A); *id.* at (b)(3)(A)(i). It excludes from liability those disclosures containing "commercial pornographic content, unless that content was produced by force, fraud, misrepresentation, or coercion of the depicted individual." 15 U.S.C. § 6851(b)(4)(A). The parties dispute how these two provisions interact. That dispute gives rise to this lawsuit.

I.  BACKGROUND[1]

    A.  **Factual Background**

Plaintiff John Doe ("Plaintiff") creates posts on OnlyFans containing sexually explicit content. OnlyFans is a subscription-based platform on which creators post content for subscribers to view. The OnlyFans terms of service prohibit any user from taking and republishing, or

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Second Amended Complaint, ECF No. 74.

1

otherwise reproducing, content from its site without permission. Plaintiff has also created pornography produced by Falcon Studios, SayUncle, Pride Studios, and ASG Max. Each of these studios grants viewers of its commercial pornography a limited license for viewing that does not permit republishing or otherwise reproducing images on a website or social media platform.

X Corp. ("X") is a social networking service where users can post text, images, and videos that others may view. X shares all posts on X with xAI Corp. ("xAI") to train its artificial intelligence model. A third party copied commercial pornographic content from Plaintiff's OnlyFans and studio-based productions and uploaded it to X without his consent, violating the OnlyFans terms and conditions and the studios' licensing agreements.

Plaintiff contends that the person who copied his images off these accounts "misrepresented [his or her] willingness to comply with the acceptable use policy and terms of service" on his platforms and thus "fraudulently gained access to [his] intimate visual depictions."[2] He alleges that the third party reposted the content to X and that X disclosed it to xAI. Accordingly, Plaintiff asserts the third party "produced" the stolen images by fraud and misrepresentation. He also alleges he informed X that "he did not consent to disclosure of his intimate images" on X, including by X to xAI.[3] Therefore, he claims X has disclosed his commercial pornographic content which was "produced by fraud" or "misrepresentation" without his consent in violation of Section 6851. He seeks to recover the $150,000 in damages provided by statute against X and xAI.

B. Procedural Background

Plaintiff originally filed this proposed class action on September 6, 2025, in the Northern District of California. ECF No. 1. The case was transferred to the Northern District of Texas on November 14, 2025. Now pending before the Court are Defendants' Motion to Dismiss the First

---

[2] Sec. Amend. Compl. ¶¶ 44-48, ECF No. 74.
[3] *Id*. at ¶¶ 60-61.

Amended Complaint (ECF No. 67); Defendants' Motion to Dismiss the Second Amended Complaint and Brief in Support (ECF Nos. 75–76); Plaintiff's Response and Appendix in Support (ECF Nos. 77–78); Plaintiff's Motion for Leave to File a Third Amended Complaint (ECF No. 79); Plaintiff's Motion for Preliminary Injunction, Brief, and Appendix in Support (ECF No. 80–82); and Plaintiff's Motion to Certify Class, Brief, and Appendix in Support (ECF Nos. 92–94).

Having reviewed the Motions, applicable law, and after considering the Parties' oral arguments, the Court **GRANTS** Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 75) and **DENIES** as moot Defendants' Motion to Dismiss the First Amended Complaint, Plaintiff's Motion for Leave to File a Third Amended Complaint, Plaintiff's Motion for Preliminary Injunction, and Plaintiff's Motion to Certify Class (ECF Nos. 67, 79, 80, 92).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Questions of statutory interpretation begin and end, as they must, with the text itself." *Kelley v. Azar*, No. 4:20-cv-283, 2021 WL 4025804, * 10 (N.D. Tex. Feb. 25, 2021) (O'Connor, J.). The meaning of statutory language "is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). "In construing a statute, a court should give effect, if possible, to every word and every provision Congress used." *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013). "When interpreting a statute, [the courts] are bound to 'follow the plain and unambiguous meaning of the statutory language.'" *United States v. Arthur*, 51 F.4th 560, 569 (5th Cir. 2022) (quoting *United States v. Shabazz*, 633 F.3d 342, 345 (5th Cir. 2011)).

4

### III.  DISCUSSION

Plaintiff admits that the images at issue in this lawsuit are commercial pornographic content that he created consensually.[4]  That means subsection (b)(1)(A) excludes Plaintiff's claim for damages, unless this content "was produced by force, fraud, misrepresentation, or coercion." § 6851(b)(4)(A).  Plaintiff argues that it was. He contends that "'produced' regarding commercial pornographic content under [§ 6851(b)(4)(A)] encompasses more than the initial creation of the image and includes actions subsequent to its initial creation."[5]  He asserts that the third party produced this content when uploading it to X after capturing and taking it from other platforms.[6]  And since that third party misrepresented and fraudulently violated the terms of service for OnlyFans and studio sites, his commercial pornographic content was produced by fraud or misrepresentation.  As X has subsequently transferred the post through its platform without his consent, he contends Defendants are liable under § 6851(b)(1)(A).  According to his interpretation, once one person unlawfully acquires commercial pornographic content in this manner, any other person or entity that distributes it without consent is liable.

In contrast, Defendants argue that "the term 'produced' as related to commercial pornographic content under § 6851(b)(4)(A) is best read, in context, as synonymous with 'created.'"  In their view, produced by fraud or misrepresentation under this section relates only to that which induced the initial creation, or production, of commercial pornographic content, not subsequent distribution of it.[7]  Accordingly, if a third party's actions do not produce the commercial pornographic content, there is no liability under § 6851 for any subsequent disclosure.[8]

---

[4] *Id.* at ¶¶ 39, 49; *see also* ECF No. 70 at 7 (acknowledging that the "content at issue" is "commercial pornographic content").
[5] Resp. 5, ECF No. 77.
[6] *Id.* at 12; *see also* Sec. Am. Compl. at ¶¶ 32-56, ECF No. 74.
[7] Mot. Dismiss Br. 7, ECF No. 76.
[8] Reply 1–2, ECF No. 85.

Thus, whether the exception to the commercial pornographic content bar applies in this case turns on what produced means in § 6851(b)(4)(A).

### A. Statutory Interpretation

Plaintiff offers two interpretative theories to support his argument that produced in section 6851(b)(4)(A) prohibits distribution by X of his commercial pornographic content after its creation. First, he asserts that section 6851 "incorporate[es] by reference" Section 2257's specialized definition of the term "produces." That definition encompasses more than an image's initial creation and includes subsequently "inserting on a computer site or service a digital image of . . . sexually explicit content." 18 U.S.C. § 2257(H)(2)(iii). He argues the third party's insertion of his intimate images onto X met the definition of produced under section 6851 (b)(4)(A) as informed by § 2257.

Neither the plain language nor the context of § 6851 supports this interpretation. Section 6851(a)(1) defines the term "commercial pornographic content" as "any material that is subject to the record keeping requirements under section 2257 of title 18." Plaintiff contends that "in order to determine whether something is subject to [the record keeping] requirements, one must necessarily consult the definition of the term 'produces' as defined therein."[9] But 18 U.S.C. § 2257(a)'s definition of produces specifies *to whom* and *when* the record-keeping requirements apply, not *what*. *See* 18 U.S.C. § 2257(a) (requiring "whoever produces any book, magazine. . ." to keep records). Accordingly, the specialized definition of produces is not essential to determining *what* material is covered by 18 U.S.C. § 2257. And it therefore does not inform the understanding of produced. § 6851 (b)(4)(A).

---

[9] Resp. 5–6, ECF No. 77.

Further, the plain language of 15 U.S.C. § 6851 makes clear that it incorporates only a limited aspect of 18 U.S.C. § 2257. *Arthur*, 51 F.4th at 569. Its text refers solely to the "*material that is subject to the record keeping requirements*" rather than 18 U.S.C. § 2257 as a whole. § 6851(a)(1) (emphasis added). That limited reference demonstrates that Congress incorporated only the specified material, not other components of § 2257.

Plaintiff alternatively argues that "long-standing principles of statutory interpretation"—namely, the specific-reference canon—deem at least the definitions section of § 2257 "to have been cut and pasted into 15 U.S.C. § 6851 by the specific reference to section 2257 of Title 18."[10] *See Hassett v. Welch*, 303 U.S. 303, 314 (1938) ("Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute.").

This argument is unpersuasive. The canon does not compel the implicit incorporation of provisions that Congress did not expressly reference, and "courts must carefully consider the text and context of each statute before adopting a one-size-fits-all approach to cross-references." *Brown v. United States*, 602 U.S. 101, 118 (2024); *see also Keller v. C.I.R.*, 568 F.3d 710, 725 (9th Cir. 2009) ("To read the statute this way would require us to hold that a statutory provision that explicitly cross-references one part of another provision also implicitly incorporates another part

---

[10] *Id*. at 6. Plaintiff suggested at oral argument that § 2257 may incorporate only the definitions section of § 2257. *See* Hr'g. Tr. 4:1–3. However, his briefing suggests that the entirety of § 2257 is incorporated into § 6851. *See* Resp. 5, ECF No. 77 ("Regarding commercial pornographic content then, under long-standing principles of statutory interpretation, the NCII Statute specifically references the whole of the Record Keeping Statute, as opposed to simply a "single aspect" (ECF No. 76 at 5) or "discrete provision" (ECF No. 76 at 6) of that statute, as Defendants contend.") (emphasis added). Under the latter theory, a civil statute—15 U.S.C. § 6851—would also incorporate the criminal provisions laid out in 18 U.S.C. § 2257(f). 15 U.S.C. § 6851 clearly does not support that result. Either way, his assertion fails for the reasons set out in this Order.

7

of that other provision. We decline to do this."). Nor does *Jam Int'l Fin. Corp*. support Plaintiff's position. 586 U.S. 199, 209 (2019). In that case, Congress unmistakably incorporated an entire statutory scheme. No such indication exists here to suggest that Congress intended to incorporate any component of § 2557 not explicitly mentioned.

Additionally, other established canons of construction undermine Plaintiff's reading. Beyond the statute's limited reference to § 2257, the plain meaning canon compels giving produced its ordinary meaning. Because Congress, "when it so chooses, knows how to deviate from the ordinary usage" of a term, courts should interpret terms in accordance with their ordinary meaning where such deviation is absent. *See United States v. Lauderdale County*, 914 F.3d 960, 965 (5th Cir. 2019); *see also Camacho v. Ford Motor Co.*, 993 F.3d 308, 312 (5th Cir. 2021) (courts should refrain from "engrafting a special definition from one statute to circumscribe the plain meaning of a term used in another"). Congress twice incorporates definitions from other statutes into 15 U.S.C. § 6851: once in § 6851(a)(1) by referencing material subject to record-keeping requirements, and again in § 6851(a)(6) by incorporating the definition of "sexually explicit content" contained 18 U.S.C. § 2256(5)(A). Thus, the context of 15 U.S.C. § 6851 demonstrates that Congress knew how to incorporate provisions of § 2257 when defining terms but chose not to incorporate the specialized definition of produces in § 2557(H)(2).

And under the plain meaning canon, the term produced refers to the creation of the sexually explicit conduct, not things that happen after the content has been created. *See* 15 U.S.C. § 6851(b)(4)(A); Produce, THE AMERICAN HERITAGE DICTIONARY (5th ed. 2012) ("To create by physical or mental effort."); *Boeta v. FAA*, 831 F.3d 636, 642-43 (5th Cir. 2016) (ordinary, non-technical terms in statutes should be interpreted in accordance with their plain meaning, which may be discerned through dictionaries).

8

Another standard canon of construction "provides that a word used in different parts of the statute should be construed to have the identical meaning throughout the entire statute." *United States v. Est. of Parsons*, 367 F.3d 409, 416–17 (5th Cir. 2004). Elsewhere, § 6851 specifies intimate images are covered even if "produced while the identifiable individual was in a public place." 15 U.S.C. § 6851(a)(5)(B). This provision plainly uses produced to mean create as it would make no sense to contemplate whether someone was in a public place when their content was reposted by a third party. Thus, production does not include all post-creation conduct, such as a third party's "insertion of [an image] on a computer site after the image was initially created"—the interpretation that Plaintiff advances. Because "[w]ithin a statute, 'the same term usually has the same meaning,'" the broader context of the statute reinforces that the best reading of produced within § 6851 means creation, which is its ordinary meaning. *In re Durand–Day*, 134 F.4th 846, 852 (5th Cir. 2025) (quoting *Pulsifer v. United States*, 601 U.S. 124, 149 (2024)).

A final canon of construction is that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up). Plaintiff's interpretation violates this principle because it effectively nullifies Congress' express exclusion for commercial pornography.

The text and structure of § 6851(b) makes clear the statute protects the privacy interest of individuals who intend to maintain control over intimate images and prevent their public dissemination.[11] The general prohibition targets the dissemination of images the individual did

---

[11] Plaintiff argues the statute does not intend to treat images differently depending on whether the individual initially intended it for commercial distribution as the "[S]tatute expressly provides 'the fact that the individual disclosed the intimate visual depiction to someone else shall not establish that the person consented to further disclosure of the intimate visual depiction' by the defendant alleged to have violated the statute." Resp. 1, ECF No. 77 (quoting § 6851(b)(1)(B)(2)). But whether an individual had consented to further distribution only becomes relevant if the content at issue is not first exempt by (b)(4)(A)'s exception clause. The definition of consent provided by (b)(1)(B)(2) does not change the parameters for the cause of action or the commercially produced pornography exemption, and accordingly, cannot serve to

not intend for public or commercial sharing. § 6851(b)(1)(A). Consistent with that focus, the statute expressly excludes commercial pornographic content—material the individual created for public distribution or monetization rather than for private use. § 6851(b)(4)(A); *see also* 18 U.S.C § 2257(a)(2) (material subject to the record keeping requirements is that which "is intended for shipment or transportation in interstate or foreign commerce"). The statute's protection of commercial pornographic content when that content is produced by "force, fraud, misrepresentation, or coercion" reinforce its focus on voluntarily waiver of privacy. § 6851(b)(4)(A). In such circumstances, the individual has not effectively consented to placing his or her intimate images into the marketplace. § 6851(b)(4)(A). Hence, the statute's structure reflects that liability turns on whether the depicted individual intended to keep his or her images private.

Under Plaintiff's theory, however, any unlicensed and nonconsensual dissemination of commercial pornography to the non-subscribing public would be a production of an intimate image by fraud, thereby bringing that content within the statute's protection. That reading would render meaningless the commercial-pornography exclusion. *White v. Black*, 190 F.3d 366, 368 (5th Cir. 1999). Because Plaintiff's interpretation collapses the exclusion into the exception and violates the canon against surplusage, it fails as a matter of statutory construction. *Corley*, 556 U.S. at 314; *Asadi*, 720 F.3d at 622.

### B. Statutory Interpretation Conclusion

For all the reasons explained above, the Court finds that produced in § 6851(b)(4)(A) has its ordinary meaning. Under the ordinary meaning of the term produced—to create by physical or

---

bring a redistribution of consensually produced commercial pornographic content under the statute's protection.

mental effort—copying and uploading already created content does not qualify as production. Produce, THE AMERICAN HERITAGE Dictionary (5th ed. 2012). Plaintiff admits that the content forming the basis of this lawsuit is consensually made commercial pornographic content. Thus, Plaintiff's content was produced only during its creation for OnlyFans or the studio—not when the third-party reposted the content.[12] Therefore, the posts containing his commercial pornographic content were not produced by fraud or misrepresentation and fall squarely within 15 U.S.C. § 6851(b)(4)(A)'s exclusion.

### C. Section 230

Section 230 also bars Plaintiff's claims. 47 U.S.C. § 230(c)(1). Section 230 provides: "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." § 230(c)(1). This provision grants "broad immunity … to Web-based service providers for all claims stemming from their publication of information created by third parties." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). "Courts have construed the immunity provisions in § 230 broadly in all cases arising from the publication of user-generated content." *Id*.

Section 230 contains an intellectual property exception, which provides: "nothing in this section shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). This provision is "construed narrowly" and applies only to claims arising from a law "directly" "pertaining to an established intellectual property right under federal law, like those inherent in a patent, copyright, or trademark." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019); *see also Google, Inc. v. Hood*, 822 F.3d 212, 220-21 (5th

---

[12] ¶¶ 39, 49; *see also* ECF No. 70 at 7 (acknowledging that the "content at issue" is "commercial pornographic content").

Cir. 2016) (observing that the Fifth Circuit "and other circuits have consistently given a wide scope" to Section 230 immunity).

Plaintiff argues that Section 230 does not provide X or xAI with immunity because the posts at issue contain intellectual property—*i.e.*, the intimate images.[13]  But Plaintiff's argument misapprehends the standard for Section 230's intellectual property exception.  The exception applies only when the claims arise from a law directly implicating intellectual property rights, not merely when intellectual property is involved in the claim.  § 230(e)(2).  And the statute under which Plaintiff sues—§ 6851—is not an intellectual property law. Rather, it is concerned with "whether the depicted individual *consented* to a specific disclosure of an intimate visual depiction—regardless who holds the copyright to the image."[14]  Thus, § 6851 creates a privacy-based tort right of action, not an intellectual-property based one.  *See Long v. Dorset*, 854 F. App'x 861, 863 (9th Cir. 2021) (finding Section 230's intellectual property exclusion did not apply when a plaintiff brought tort claims "unrelated to intellectual property" against Facebook for alleged "failure to timely remove" copyright-infringing content from its website).  Accordingly, Section 230 immunizes X and xAI, barring Plaintiff's claims.

### D. Leave to Amend

Plaintiff requested the opportunity to replead at oral argument.[15]  However, he has not explained the facts that he could provide showing liability under the statute. As such, leave to amend is **DENIED**.  *See Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 (5th Cir. 2012); *see also Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) (a Court need not grant leave to amend when amendment would be futile).

---

[13] Resp. 10–11, ECF No. 77.
[14] Reply 6, ECF No. 85.
[15] Hr'g. Tr. 1:7–10.

## IV. CONCLUSION

Title 15 U.S.C. § 6851(b)(4)(A) excludes from liability the nonconsensual distribution of commercial pornographic content unless it was produced by fraud or misrepresentation. Produced in this provision has its ordinary meaning—that is, creation. Plaintiff created his commercial pornographic content freely and voluntarily. Accordingly, any unauthorized disclosure of it by Defendants is not protected. Additionally, Section 230 immunizes Defendants from liability. 47 U.S.C. § 230. Plaintiff's complaint is therefore **DISMISSED with prejudice**.

**SO ORDERED** this **February 25, 2026**.

_____
Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**